| Case No. | 2:16-cr-00073-CAS-9 | Date | August 9, 2017 |
|---|---|---|---|
| Present: The Honorable | CHRISTINA A. SNYDER | | |
| Interpreter | N/A | | |

| Catherine Jeang | Not Present | Benedetto Balding, Not Present<br>Catharine Richmond, Not Present<br>Shawn Nelson, Not Present |
|---|---|---|
| *Deputy Clerk* | *Court Reporter/Recorder, Tape No.* | *Assistant U.S. Attorney* |

| U.S.A. v. Defendant(s): | Present | Cust | Bond | Attorneys for Defendants: | Present | App. | Ret. |
|---|---|---|---|---|---|---|---|
| 9) Mark Garcia | NOT | | X | 9) ZOE DOLAN | NOT | | X |

**Proceedings:** (IN CHAMBERS) - DEFENDANT'S FIRST SUPPLEMENT TO "APPLICATION FOR HEARING ON MOTION TO RIGHT A WRONG" (Dkt. 514, filed August 7, 2017)

DEFENDANT'S SECOND SUPPLEMENT TO "APPLICATION FOR HEARING ON MOTION TO RIGHT A WRONG" (Dkt. 515, filed August 8, 2017)

On January 31, 2016, the government filed a criminal complaint against defendant Mark Garcia, among others, stating that defendant conspired to possess with the intent to distribute and possessed with intent to distribute marijuana. Dkt. 1 ("Compl.").

The complaint contained the following allegations. Narcotics smugglers typically bring narcotics into the United States using open-bowed fishing boats commonly known as "pangas." Compl. ¶ 8a.

Arroyo Quemada Beach ("AQ Beach") in Santa Barbara County is relatively remote and accessible by one access road, commonly known as Arroyo Quemada Lane ("AQ Lane"). Id. ¶ 9. Between 2012 and January 2016, when the complaint was filed, there were approximately ten panga boat landings in or around AQ Beach. Id.

At approximately 12:30 am on January 30, 2016, the U.S. Coast Guard alerted the Santa Barbara County Sheriff's Department ("SBSD") that a panga boat landed on or in the vicinity of AQ Beach. Id. ¶ 11; dkt. 383-1, Declaration of Detective Christopher Dallenbach ("Dallenbach Decl.") ¶ 4. The Coast Guard reported that people were carrying packages from the boat up the hill toward the road. Compl. ¶ 11; Dallenbach Decl. ¶ 4. The Coast Guard

observed a van and a truck approach the beach and saw individuals loading some of the packages into the van and truck. Compl. ¶ 11.

Upon receiving this information from the Coast Guard, Los Angeles Sheriff Department Deputy Kamal Ahmad positioned himself to conduct surveillance of AQ Lane. Id. ¶ 12; dkt. 383-2, Declaration of Sergeant Kamal Ahmad ("Ahmad Decl.") ¶¶ 3–4. Ahmad positioned himself on a hill overlooking the entrance to AQ Lane and used an infrared camera affixed to an approximately 20 to 25 foot telescoping boom, which was placed in the bed of his truck. Ahmad Decl. ¶ 3. From that position, Ahmad contends that he could see cars coming and going on AQ Lane. Id. ¶ 4. He could also see activity of people on foot through the trees near the entrance to AQ Lane and observed people loading objects into the waiting vehicles. Id. ¶ 5.

At approximately 2:17 am, Ahmad saw a white van travelling southbound on Highway 101. The van entered AQ Lane, made a U-turn and parked facing the highway. Id. ¶ 6; Compl. ¶ 12a. Ahmad observed several individuals loading packages into the van. Ahmad Decl. ¶ 6. At approximately 2:31 am, the van re-entered Highway 101 and headed south. Id.

Also at approximately 2:31 am, Ahmad saw a truck traveling southbound on Highway 101. Id. ¶ 7. Compl. ¶ 12b. The truck entered AQ Lane, made a U-turn and parked in the same position as the van. Ahmad again observed several individuals loading packages into the truck. Ahmad Decl. ¶ 7. At approximately 2:40 am, the van re-entered Highway 101 and headed south. Id.

By radio, Ahmad relayed the information gained from his surveillance to other law enforcement surveillance units in the area. Compl. ¶ 12a; Ahmad Decl. ¶¶ 6–7.

SBSD Detectives Jeff McDonald and Wayne Flick were on duty on January 30, 2016 and assigned to monitor traffic on Highway 101. Dkt. 383-4, Declaration of Detective McDonald ("McDonald Decl.") ¶ 2. At approximately 2:40 am, McDonald and Flick heard via radio that a truck had entered AQ Lane and was being loaded with packages. Id. ¶ 5; Compl. ¶ 12b. Minutes later, McDonald and Flick saw a blue GMC extra cab truck pass them traveling southbound on Highway 101. McDonald Decl. ¶ 6. McDonald observed that the back of truck appeared to be weighed down, indicating that the truck carried a significant amount of cargo. Id.; Compl. ¶ 12b. In addition, the truck was traveling between 45 and 55 miles per hour in an area with a speed limit of 65 miles per hour, which seemed unusual to McDonald given the absence of traffic. McDonald Decl. ¶ 6. McDonald and Flick followed the truck and requested a marked law enforcement car to conduct a traffic stop. Id.; Compl. ¶ 12b. McDonald and Flick maintained visual contact with the truck until patrol units could stop the truck. McDonald Decl. ¶ 6.

**CRIMINAL MINUTES – GENERAL     'O'**

McDonald and Flick conducted the stop of the truck along with two SBSD deputies. Compl. ¶ 12b. Defendant was one of the passengers in the truck. Id. "[N]umerous bales" of marijuana were discovered in the truck. Id.

On February 12, 2016, defendant was charged in a two-count indictment with (1) conspiring to possess at least 1000 kilograms of marijuana with intent to distribute, in violation of 21 U.S.C. § 846; (2) possession with intent to distribute marijuana, and aiding and abetting others in the same offense, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A)(vii) and 18 U.S.C. § 2(a). Dkt. 114. Defendant has entered a not-guilty plea. Dkt. 164.

On July 24, 2017, after holding an evidentiary hearing, the Court denied defendant's "application for a hearing on motion to right a wrong," which the Court construed as a motion to suppress evidence obtained during the traffic stop. Dkt. 480 ("July Order"). The Court reached the following conclusions:

> [W]hen considering the totality of the circumstances, McDonald and Flick had reasonable suspicion sufficient to initiate a traffic stop. The Coast Guard alerted the SBSD to a panga offload at AQ beach immediately before [Los Angeles Sheriff Department Deputy Kamal] Ahmad, McDonald, and Flick observed the truck. Such conduct was consistent with prior narcotic smuggling operations in Southern California. Using an infrared camera affixed to a 20 to 25 foot telescoping boom, Ahmad observed the truck enter AQ Beach, get loaded with packages, and depart AQ beach heading south on Highway 101. Shortly thereafter, McDonald and Flick saw a truck, heavily loaded in the back, traveling southbound on Highway 101. Taken together, the Court concludes that McDonald and Flick had a "particularized and objective basis for suspecting legal wrongdoing." [United States v. Arvizu, 534 U.S. 266, 273 (2002).] Any discrepancy between when McDonald and Flick saw the truck—either (1) as it left AQ Lane and travelled southbound on Highway 101, see Compl. ¶ 12b, or (2) as it passed McDonald and Flick traveling southbound on Highway 101, see McDonald Decl. ¶ 6—does not create a dispute as to a critical fact supporting a finding of reasonable suspicion: McDonald and Flick saw the truck identified by Ahmad shortly after Ahmad observed the vehicle get loaded with packages from a panga boat offload. Furthermore, the times provided in the Complaint are expressly "approximate[]." See generally Compl. Because McDonald and Flick's traffic stop was supported by reasonable suspicion that the truck contained contraband, the stop was constitutional.

Id. at 5.

On August 7, 2017, defendant filed a renewal of his "motion to right a wrong," seeking to suppress evidence seized after the traffic stop and his post-arrest statements because a

photograph of the truck after it had been stopped purportedly shows that the truck "did not appear to be weighed down at all." Dkt. 514. On August 8, 2017, defendant filed a second renewal of his "motion to right a wrong," seeking to suppress evidence seized after the traffic stop and his post-arrest statements because a still image from a video provided by the government purportedly shows the truck traveling 56 miles per hour in a 55 mile per hour zone. Dkt. 515.

On August 8, 2017, the Court heard oral argument from the parties regarding defendant's motions. In addition, the Court has reviewed the video recording, which appears to be from the dashboard camera of the patrol unit that stopped the truck, and from which the still images were taken. Having carefully considered the parties' arguments and the evidence submitted, the Court concludes that there is no basis to reconsider its July Order. In finding that there was reasonable suspicion for the traffic stop, the Court did not rely on McDonald's observations that the truck appeared to be weighed down or that the truck was traveling unusually slowly. In accordance with the foregoing, the Court **DENIES** defendant's supplemental motions to suppress the evidence seized pursuant to the traffic stop and the post-arrest statements.

IT IS SO ORDERED.

                                                    00 : 00

Initials of Deputy Clerk     CMJ